**The below described is SIGNED.**



**Dated: August 13, 2014**



R. KIMBALL MOSIER
U.S. Bankruptcy Judge

---

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>TWIN PEAKS FINANCIAL SERVICES, INC., aka KENNETH C. TEBBS, aka MNK INVESTMENTS, INC., and MNK INVESTMENTS,<br><br>Debtor. | Bankruptcy Case Number:<br><br>07-25399<br>07-25401<br>(Substantively Consolidated as 07-25399)<br><br>Chapter 7<br><br>Adversary Proceeding Number |
| DUANE H. GILLMAN, as Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD GEIS and COLETTE GEIS,<br><br>Defendants. | 09-02574<br><br>Judge R. Kimball Mosier |

**MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS RICHARD AND COLETTE GEIS**

---

Duane H. Gillman (Trustee) brought this action to avoid fraudulent transfers received by Richard and Colette Geis (Defendants). The Trustee moved for summary judgment based on the undisputed facts and matters of law previously determined by this Court. The Defendants

opposed the Motion, asserting defenses based on an alleged state statutory claim for security fraud. The Court concludes that the Defendants' alleged statutory claim is not a defense to the Trustee's fraudulent transfer claim and will grant the Trustee's motion for summary judgment.

## I. JURISDICTION

The jurisdiction of this Court is properly invoked under 28 U.S.C § 1334. The Motion seeks an order of this Court pursuant to 11 U.S.C. § 548[1] and is a civil proceeding arising under Title 11. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), & (O) and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1409.

## II. UNDISPUTED FACTS

The bankruptcy cases of Twin Peaks Financial Services, Inc. and MNK Investments (collectively "Debtor") were commenced by separate petitions for orders for involuntary relief under chapter 11 of the United States Bankruptcy Code. Orders for relief under chapter 11 were entered and the cases were substantively consolidated. The consolidated cases were converted to chapter 7 and Duane H. Gillman was appointed trustee.

This Court has already determined in the "Ponzi Proceeding"[2] that the Debtor operated a Ponzi scheme. Although the Debtor's purported business was real estate investment, the Debtor primarily funded operations by cash receipts derived from investment-type loans from third party individuals and business entities. For a time those who invested early were able to recoup their initial investment plus their promised return. Payments to these investors were not made from the profits of legitimate business operations, but were paid using the money of subsequent investors. Like all Ponzi schemes must, the Debtor's scheme collapsed, leaving the scheme's Johnny-come-latelies owed millions of dollars. This Court has also determined in the

---

[1] Statutory references herein are to Title 11 of the United States Code, unless stated otherwise.
[2] Misc. Adv. Proc. No. 11-8006, Docket No. 56.

2

"Insolvency Proceeding"[3] that the Debtor was at all times insolvent and engaged in business for which it had an unreasonably small capital.

Within the two years prior to the petition date, the Defendants received payments from the Debtor in the amount of $290,557.60, which enabled them to receive $59,754.85 (Transfers) more than they invested with the Debtor.

### III. DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.[4] Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.[5]

There is no genuine dispute that the Defendants received disbursements of $59,754.85 in excess of their investments with the Debtor. The Defendants dispute that the Trustee has established that the specific payments they received, the Transfers, were made with the subjective intent to hinder, delay, and defraud creditors. The Defendants also assert that they have a statutory state law securities fraud claim which provides a valid defense to the Trustee's fraudulent transfer claim.

#### A. Fraudulent Transfer Law and the Ponzi Presumption.

The Defendants did not contest the Ponzi Proceedings and they concede that the Trustee has established that the Debtor was operating a Ponzi scheme. The Defendants argue, however, that they should not be bound by the Ponzi Proceeding order because the order went beyond the scope of that proceeding by finding that the Debtor's transfers to investors were made with

---

[3] Misc. Adv. Proc. No. 11-8005, Docket No. 56.
[4] *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

actual intent to defraud creditors. Notwithstanding the fact that the Debtor's operation constituted a Ponzi scheme, the Defendants maintain that the Trustee is required to prove that the specific transfers to the Defendants were made with actual intent to hinder, delay and defraud creditors. Unfortunately for the Defendants, the "Ponzi presumption" establishes that the mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.[6]

The Defendants' contention is that the Debtor's Ponzi scheme was "intertwined with other business operations" and therefore the Trustee is required to prove that the payments made specifically to them were made with the intent to hinder, defraud and delay creditors. The extent of a debtor's legitimate business operations is relevant to determining whether the Debtor's business operations constituted a Ponzi scheme, but it is not relevant once it is determined that, notwithstanding some legitimate business operations, the Debtor was operating a Ponzi scheme.

The relevancy of a debtor's legitimate business operations in Ponzi scheme cases is discussed in great detail in Judge Jenkins' comprehensive analysis of Ponzi schemes and the "Ponzi presumption" in *S.E.C. v. Management Solutions, Inc*.[7] After a thorough review of case law, Judge Jenkins determined that all definitions and descriptions of Ponzi schemes have a common base: "a Ponzi scheme is a fraudulent investment scheme in which 'returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments.'"[8] The fact that an investment scheme may have some legitimate business operations is not determinative. If the debtor's legitimate business operations cannot fund the promised returns to investors, and the payments to investors are funded by newly attracted investors, then the debtor is operating a Ponzi scheme. Once the trustee has established that the debtor was operating a Ponzi scheme, the debtor's intent to

---

[6] *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011).
[7] *S.E.C. v. Management Solutions, Inc*. 2013 WL 4501088 (D. Utah Aug. 22, 2013).
[8] *Id.* at *19 (citing *In re Indep. Clearing House Co*., 41 B.R. 985, 994 n.12 (Bankr. D. Utah 1984)).

hinder, delay or defraud is established as a matter of law. "One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible."[9] Once the "Ponzi presumption" is established, the requisite intent to defraud is presumed and the burden of establishing a statutory defense shifts to the transferee.[10]

**B. The Defendants' Alleged State Law Statutory Claim Does Not Constitute "Value" for Purposes of § 548.**

The Defendants assert that they have a state law statutory claim for securities fraud which gives them a legally enforceable claim for principle, interest and attorneys' fees. Although their briefs are confusing, the Court concludes that the Defendants contend that their alleged statutory claim constitutes "value" for purposes of § 548 which was given in exchange for the Transfers.

A trustee may avoid a transfer under § 548(a)(1)(B) if the debtor received less than a reasonably equivalent "value" in exchange for the transfer. Additionally, under § 548(c) a transferee may retain any interest transferred to the extent the transferee gave "value" to the debtor in exchange for the interest transferred. In order to defend against the Trustee's § 548(a)(1)(B) claim, or avail themselves of the protection of § 548(c), the Defendants must have given "value" in exchange for the Transfers they received. The parties do not dispute that the Defendants gave value in the amount of their investment or "undertaking," with the Debtor. The legal dispute is whether Defendants gave value for the $59,754.85 they received in excess of their investment.

Section 548(d)(2)(A) defines "value", for purposes of § 548, as "property, or satisfaction . . . of a present or antecedent debt of the debtor . . . ." The "property" the Defendants gave, their investment, has already been taken into account and the Defendants gave the Debtor no other

---

[9] *Merrill v. Abbott (In re Indep. Clearinghouse Co.)*, 77 B.R. 843, 860 (D. Utah 1987).
[10] *S.E.C. v. Management Solutions, Inc*. 2013 WL 4501088 at *6.

5

"property" in exchange for the Transfers. Therefore, the only "value" the Defendants can assert they gave in exchange for the Transfers was the satisfaction of a present or antecedent debt, presumably their alleged statutory claim. The Defendants assert their claim arises under Utah Code Ann. § 61-1-22(1)(b). The section the Defendants rely on specifically provides that the person seeking recovery:

> *may* sue either at law or in equity to recover the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney's fees, less the amount of income received on the security, **upon the tender of the security** . . . .[11]

By the express language of the statue, the recovery is elective and is conditioned upon tender of the security by the person seeking recovery. At the time the Transfers were made, the Defendants had not elected to tender their Investment Contract, and had not commenced a suit at law or in equity. On the date of the Transfers, the Defendants had not asserted their statutory claim and there was no debt owed on the Defendants' alleged statutory claim. The Defendants' potential statutory claim thus did not constitute "value" on the date the Transfers were made.

The Defendants maintain that the *Hedged-Investments*[12] and *Independent Clearing House* cases are distinguishable because they dealt with contract claims and "did not address the question of whether the bankruptcy court, with the wave of the hand, can declare null and void statutory rights granted to victims of fraud." The distinction the Defendants attempt to draw is unconvincing and misses the mark. The Court need not nullify or void the Defendants' statutory rights, the Court must simply determine whether the Defendants' alleged statutory rights constitute "value" for purposes of § 548 and were given in exchange for the Transfers.

---

[11] Utah Code Ann. § 61-1-22(1)(b) (emphasis added).
[12] *Sender v. Buchanan (In re Hedged-Investments Associates, Inc.)*, 84 F.3d 1286 (10th Cir. 1996).

Moreover, the Transfers were not given in exchange for satisfaction of the Defendants' alleged statutory claim. As already explained, on the date of the Transfers there was no statutory claim. The Transfers were made pursuant to the Investment Contracts. There was no other reason for the Transfers and the Defendants cannot now argue that the Transfers were made in exchange for satisfaction of their alleged statutory claim. This conclusion does not nullify or void the Defendants' statutory rights. Had the Defendants availed themselves of their remedies pursuant to Utah Code Ann. § 61-1-22(1)(b) and established their claim prior to the date of the Transfers, the analysis may be different, but they did not.

C. **The Transfers May Be Avoided Under § 548.**

The Trustee has established his claims under § 548(a)(1)(A) and § 548(a)(1)(B).

1. **The Trustee has Established the Elements of § 548(a)(1)(A).**

To avoid a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A), the Trustee must demonstrate (1) that the Debtor transferred to the Defendants an interest of the Debtor in property within the two years prior to the petition date, and (2) that the Debtor made such transfer with actual intent to hinder, delay, or defraud other creditors of the Debtor. The first element has been established by undisputed facts. The second element is established as a matter of law by the Ponzi Proceeding and the Ponzi presumption arising from the order in that proceeding.

2. **The Trustee has Established the Elements of § 548(a)(1)(B).**

The Defendants do not directly address the Trustee's § 548(a)(1)(B) claim, but the Court assumes that the Defendants do not concede that the Trustee has established the elements of this claim. The Trustee may establish his claim under § 548(a)(1)(B) if he proves: (1) that the Debtor transferred to the Defendants an interest of the Debtor in property within two years of the

7

petition date, (2) the Debtor received less than a reasonably equivalent value in exchange for such transfer, and either (a) the Debtor was insolvent on the date that the transfer was made, or (b) the Debtor was engaged in business for which any property remaining with the Debtor was unreasonably small capital. It is undisputed that the Transfers were property of the Debtor, made within two years of the petition date and that the Debtor was insolvent when the Transfers were made. As discussed above, the Defendants potential statutory claim did not constitute value given in exchange for the Transfers and the Defendants gave no other value in excess of their undertaking. The Trustee has therefore established his § 548(a)(1)(B) claim.

### D. **The Defendants' Confuse a Creditor's § 548(c) Right to Retain Transfers and a Creditor's § 553 Right of Setoff.**

The Defendants have also generally asserted that they have a right to offset their alleged statutory claim against the Trustee's avoidance action. In their memorandum, the Defendants attempt to distinguish *Independent Clearing House* by arguing that the court in that case "denied an offset under § 543 (sic) for sums above the principal" on a contract claim and did not address a defendant's right of setoff for a statutory claim. Contrary to the Defendants' assertion, the *Independent Clearing House* case did not even address setoff. Although the Defendants generally assert they have a right to offset their potential statutory claim, they have not squarely addressed the setoff requirements of § 553 and have not clearly stated whether they are asserting a right of setoff under § 553 or are right to retain the transfers under § 548(c). Nevertheless, the Court will address both of these arguments.

#### 1. The Defendants Do Not Have a Section § 553 Right of Setoff.

The Trustee asserts that the Defendants are barred from asserting their right to offset their claim against the Trustee's claims because the Defendants did not file a proof of claim by the claims deadline. However, in the Tenth Circuit, "until discharge is ordered, a creditor need not

8

file a proof of claim as a prerequisite to asserting a right of setoff pursuant to § 553."[13] Therefore, even though the Defendants failed to timely file a proof of claim, they are not precluded from asserting their right of setoff if they can establish the necessary elements.

"The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'"[14] Section 553 does not create a federal right of setoff but "simply preserves setoff rights that might otherwise exist under federal or state law."[15] If the court makes a threshold determination that an independent right of setoff exists outside of bankruptcy, it will consider whether the conditions of § 553 are satisfied.[16] "Setoff in bankruptcy is neither automatic nor mandatory; rather, its application rests within the sound discretion of the bankruptcy court."[17] Under § 553 a creditor may offset its obligations only if the creditor establishes its independent right of setoff and proves each of the following three elements:

> First, the creditor must owe a debt to the debtor that 'arose before the commencement of' the bankruptcy proceeding. Second, the creditor must have a claim against the debtor that 'arose before the commencement of' the bankruptcy proceedings. Third, the creditor's and debtor's obligations must be mutual.[18]

Setoff "grants a creditor the right 'to offset a mutual debt owing by such creditor to the debtor' so long as both debts arose before commencement of the bankruptcy action and are indeed mutual."[19]

---

[13] *In re G.S. Omni Corp.*, 835 F.2d 1317, 1319 (10th Cir. 1987); s*ee also In re Davidovich,* 901 F.2d 1533, 1539 (10th Cir. 1990) ("we reaffirm our holding in Omni that filing of a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553").
[14] *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 289 (1995) (quoting *Studley v. Boylston Nat'l. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808 (1993)).
[15] *United States v. Myers (In re Myers),* 362 F.3d 667, 672 (10th Cir. 2004).
[16] *Id.*
[17] *Id.* (citing 5 Collier on Bankruptcy ¶ 553.02[3] (15th ed. Rev. 2003)).
[18] *Id.*
[19] *In re Davidovich*, 901 F.2d at 1537.

Even assuming the Defendants' alleged statutory claim is a "debt", their claim for setoff fails because they cannot satisfy the other two elements for setoff: (1) they did not owe a debt to the Debtor that arose before the commencement of the bankruptcy proceeding, and (2) they cannot establish the mutuality requirement. The Defendants' claim against the Debtor arose prepetition. The Trustee's § 548 claims, did not exist until the bankruptcy was filed. His claim against the Defendants, their debt, therefore arose postpetition.

The mutuality requirement mandates that the debts be in the same right and between the same parties, standing in the same capacity.[20] The Defendants' alleged claim is a claim against the Debtor. The Trustee does not assert a claim based upon any claim the Debtor had against the Defendants. The Trustee is asserting a claim against the Defendants is his capacity as Trustee pursuant the statutory powers given to him by the Bankruptcy Code. The mutuality requirement is not met because the debts are not in the same right and between the same parties, standing in the same capacity.

Those courts that have addressed the issue of setoffs against fraudulent transfers have similarly held that "[a] fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim."[21] Section 553 setoffs do not apply to fraudulent transfer actions because it would defeat the purpose of § 548 to allow creditors to offset the value of the property thus transferred to them by the amount of their unsecured claim against the debtor.[22] A setoff here would have the effect of "paying one creditor more than the rest."[23] A setoff has such an

---

[20] *Id.*; *see also Tradex, Inc. v. United States (In re IML Freight, Inc.)*, 65 B.R. 788, 791 (Bankr. D. Utah 1986).
[21] *In re Acequia, Inc.*, 34 F.3d 800, 817 (9th Cir. 1994) (quoting *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir. 1991)).
[22] *Bustamante v. Johnson (In re McConnell),* 934 F.2d 662, 667 (5th Cir.1991) (internal quotations omitted); s*ee also In re Acequia, Inc.*, 34 F.3d at 817 (finding that the reason for the "no setoff" rule is that if setoffs were permitted to be done against fraudulent transfers, it would defeat the right to recover the conveyance and render the statute futile).
[23] *In re IML Freight, Inc.*, 65 B.R. at 791.

effect because it elevates an unsecured claim to essentially secured status, and works in effect as a preference.[24]

"The right of setoff is one which is grounded in fairness. It would be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor."[25] Absent the recognition of the right of setoff, a creditor might be forced to pay the bankruptcy estate the full amount the creditor owes. However, that creditor would be limited only to a pro rata recovery of its claim. The imposition of such a loss on the creditor has been generally viewed as inappropriate and unfair.[26]

Setoff's fairness argument is, however, inapplicable to Ponzi scheme cases. Notions of fairness that permit setoff in appropriate cases preclude setoff in Ponzi scheme cases. Fairness clearly dictates that a creditor who received a fraudulent transfer should not be able to retain their profits that were financed by other defrauded creditors who have not even received their undertaking. In this case, the Defendants have already received the full amount of their initial undertaking and cannot retain their Ponzi profits by offset.

### 2. The Defendants Cannot Retain the Transfers Under § 548(c).

Section 548(c) provides:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

Even if the payments to the Defendants were fraudulent conveyances, the Defendants are protected to the extent they took for "value" and in "good faith." The *Independent Clearing*

---

[24] *Id.* at 791-792.
[25] *In re G.S. Omni Corp.*, 835 F.2d at 1318.
[26] *Id.*

*House* court made clear that in Ponzi scheme cases, only the amount of a defendant's undertaking constitutes "value" and credit cannot also be given for amounts in excess of a that undertaking.[27] "To allow an undertaker to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme at the expense of other undertakers."[28] For that reason, the court in *Independent Clearing House* looked beyond the terms of the contract to the underlying facts to determine whether the contract was unenforceable on public policy grounds.[29] Looking at the underlying facts, the court found that any money that the defendant might have recovered in excess of his undertaking in an action based on the contract could not have come from the debtors, but instead would have come from money that rightfully belonged to other, defrauded undertakers.[30]

As previously discussed, Defendants' alleged statutory claim was not "value" within the meaning of § 548 and the Transfers were not made in exchange for the Defendants' potential statutory claim but were made pursuant to the Investment Contracts. Like the contract claims in *Hedged-Investments* and *Independent Clearing House*, to allow the Defendants to retain their avoidable fictitious Ponzi scheme profits would frustrate the purpose of the fraudulent transfer statute, and would allow the Defendants to profit at "the expense of those who entered the scheme late and received little or nothing."[31]

## IV. CONCLUSION

The Trustee has established his claims under § 548(a)(1)(A) and (B). The Defendants' attempted distinction between the contract claims addressed in *Hedged-Investments* and the

---

[27] *In re Indep. Clearing House Co.*, 77 B.R. at 861; *see also In re Hedged-Investments Associates, Inc.*, 84 F.3d at 1290.
[28] *In re Indep. Clearing House Co.*, 77 B.R. at 861.
[29] *Id.* (citations omitted).
[30] *Id.*
[31] *Id. at 870.*

12

Defendants' potential statutory claim is not meaningful. The Defendants' potential statutory claim does not constitute "value" under § 548(d)(2) and the Transfers were not given in satisfaction of the Defendants' potential statutory claim. The Defendants cannot establish the necessary elements for set off under § 553. Therefore the Court will grant the Trustee's motion for summary judgment.

-------------------------------------------End of Document--------------------------------------------

## **DESIGNATION OF PARTIES TO BE SERVED**

Service of the foregoing Memorandum Decision on Trustee's Motion for Summary Judgment Against Defendants Richard and Colette Geis shall be served to the parties in the manner designated below:

**By Electronic Service**:

- Burton G Davis    bdavis@djplaw.com
- Ian Davis    idavis@djplaw.com
- Penrod W. Keith    pkeith@djplaw.com, khughes@djplaw.com
- Jessica G Peterson    jpeterson@djplaw.com, khughes@djplaw.com
- Jerome Romero    jromero@joneswaldo.com, bparry@joneswaldo.com